| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| WRIGHT, FINLAY & ZAK, LLP<br>Nichole L. Glowin, Esq. SBN 262932<br>4665 MacArthur Court, Suite 200<br>Newport Beach, CA 92660<br>Tel: (949) 477-5050; Fax: (949) 608-9142<br>nglowin@wrightlegal.net<br><br>☒ *Movant appearing without an attorney*<br>☐ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| In re:<br><br>TINA M. COCA | CASE NO.: 6:18-bk-16905-MH<br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| Debtor(s). | DATE: 10/16/2018<br>TIME: 10:00 am<br>COURTROOM: 303 |

| **Movant:** First Midwest Bank, its sucessors and/or assigns |
|---|

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012      ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☒ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 09/14/2018

WRIGHT, FINLAY & ZAK, LLP
Printed name of law firm (if applicable)

Nichole L. Glowin
Printed name of individual Movant or attorney for Movant

/s/ Nichole L. Glowin
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 2                                    **F 4001-1.RFS.RP.MOTION**

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 2345 Cornell Circle
   *Unit/suite number*:
   *City, state, zip code*: Corona, CA 92881-6625

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __2__):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary   bankruptcy petition under chapter   ☒ 7 ☐ 11 ☐ 12 ☐ 13
   was filed on (*date*)  __08/15/2018__.

   b. ☐ An order to convert this case to chapter   ☐ 7 ☐ 11 ☐ 12 ☐ 13   was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

       (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

       (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

       (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

       (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

       (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

       (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

       (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

       (F) ☐ Other (*see attached continuation page*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                  Page 3                          **F 4001-1.RFS.RP.MOTION**

    (3) ☐ *(Chapter 12 or 13 cases only)*

        (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

        (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

    (4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

    (5) ☐ The Movant regained possession of the Property on (*date*) _____,
which is ☐ prepetition ☐ postpetition.

    (6) ☐ For other cause for relief from stay, see attached continuation page.

  b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

  c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

  d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

**5.** ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

  a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

  b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

  c. ☐ Other (*specify*):

**6.** **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion***)**

  a. The REAL PROPERTY DECLARATION on page 6 of this motion.

  b. ☐ Supplemental declaration(s).

  c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _4_____.

  d. ☒ Other:
Note, Deed of Trust, Assignment and Debtor's Schedules A and D.

**7.** ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                     Page 4                     **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☒ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  09/14/2018

WRIGHT, FINLAY & ZAK, LLP
_____
Printed name of law firm (*if applicable*)
 Nichole L. Glowin
_____
Printed name of individual Movant or attorney for Movant

/s/ Nichole L. Glowin
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 5                    **F 4001-1.RFS.RP.MOTION**

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Monica Lash _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐  I am the Movant.

   b. ☒  I am employed by Movant as (*state title and capacity*): AVP Bankruptcy / Foreclosure _____

   c. ☐  Other (*specify*):

2. a. ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐  Other (*see attached):*

3. The Movant is:

   a. ☐  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

   b. ☒  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as Exhibit  3    .

   c. ☐  Servicing agent authorized to act on behalf of the:

      ☐  Holder.
      ☐  Beneficiary.

   d. ☐  Other (*specify):*

4. a.  The address of the Property is:

   *Street address*: 2345 Cornell Circle
   *Unit/suite no.*:
   *City, state, zip code*: Corona, CA 92881-6625

   b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
   2013-0500176, Riverside County, California. See also Exhibit 2 attached hereto, Deed of Trust, which contains the relevant legal description for the subject property.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                              Page 6                                              **F 4001-1.RFS.RP.MOTION**

5.  Type of property (*check all applicable boxes*):

a.  ☒  Debtor's principal residence          b.  ☐  Other residence
c.  ☐  Multi-unit residential                d.  ☐  Commercial
e.  ☐  Industrial                            f.  ☐  Vacant land
g.  ☐  Other (*specify*):

6.  Nature of the Debtor's interest in the Property:

a.  ☒  Sole owner

b.  ☐  Co-owner(s) (*specify*):

c.  ☐  Lienholder (*specify*):

d.  ☐  Other (*specify*):

e.  ☒  The Debtor  ☒ did  ☐ did not  list the Property in the Debtor's schedules.

f.  ☐  The Debtor acquired the interest in the Property by  ☐ grant deed  ☐ quitclaim deed  ☐ trust deed.

    The deed was recorded on (*date*) _____.

7.  Movant holds a  ☒ deed of trust  ☐ judgment lien  ☐ other (*specify*) _____
    that encumbers the Property.

a.  ☒  A true and correct copy of the document as recorded is attached as Exhibit  2____.

b.  ☒  A true and correct copy of the promissory note or other document that evidences the Movant's claim is
        attached as Exhibit  1____.

c.  ☒  A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
        trust to Movant is attached as Exhibit  3____.

8.  Amount of Movant's claim with respect to the Property:

|     |                                                          | PREPETITION | POSTPETITION | TOTAL |
|-----|----------------------------------------------------------|-------------|--------------|-------|
| a.  | Principal:                                               | $           | $            | $ 82,829.14 |
| b.  | Accrued interest:                                        | $           | $            | $ 6,585.53 |
| c.  | Late charges                                             | $           | $            | $ 450.00 |
| d.  | Costs (attorney's fees, foreclosure fees, other costs):  | $           | $            | $ 0.00 |
| e.  | Advances (property taxes, insurance):                    | $           | $            | $ 0.00 |
| f.  | Less suspense account or partial balance paid:           | $[        ] | $[         ] | $[0.00      ] |
| g.  | TOTAL CLAIM as of (*date*):  07/23/2018                  | $           | $            | $ 89,864.67 |

h.  ☐ Loan is all due and payable because it matured on (*date*) _____

9.  Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
    has occurred*):

a.  Notice of default recorded on (*date*) 04/23/2018  or ☐ none recorded.

b.  Notice of sale recorded on (*date*)  07/26/2018  or ☐ none recorded.

c.  Foreclosure sale originally scheduled for (*date*)  08/23/2018  or ☐ none scheduled.

d.  Foreclosure sale currently scheduled for (*date*)  09/20/2018  or ☐ none scheduled.

e.  Foreclosure sale already held on (*date*) _____  or ☒ none held.

f.  Trustee's deed upon sale already recorded on (*date*) _____  or ☒ none recorded.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 7                    **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $ 424.81_____ for the month of July_____ 20 18 .

   b. Number of payments that have come due and were not made: _13____ . Total amount: $ 5,792.42_____

   c. Future payments due by time of anticipated hearing date (*if applicable*):

   An additional payment of $ 424.81_____ will come due on (*date*) 08/01/2018_ , and on the 1st___ day of each month thereafter. If the payment is not received within 15____ days of said due date, a late charge of $ 25.00_____ will be charged to the loan.

   d. The fair market value of the Property is $ 666,553.00_____ , established by:

   (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____ .

   (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____ .

   (3) ☒ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit X 5 .

   (4) ☐ Other (*specify*):

   e. **Calculation of equity/equity cushion in Property:**

   Based upon ☐ a preliminary title report ☒ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | New Penn Financial/Shellpoint | $ 421,213.63 | $ |
| 2nd deed of trust: | First Midwest Bank | $ | $ 89,864.67 |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | Solarmax Ren. | $ 33,375.00 | $ |
| **TOTAL DEBT: $ 544,453.30** | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit 1-4___ and consists of:

   (1) ☐ Preliminary title report.

   (2) ☒ Relevant portions of the Debtor's schedules.

   (3) ☒ Other (*specify*): Note, Deed of Trust and Assignment

   g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
   I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

   h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
   By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ 122,099.70_____ .

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 8                    **F 4001-1.RFS.RP.MOTION**

i. ☒ Estimated costs of sale: $ 53,324.24 _____ (estimate based upon __8____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                        $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                        $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                    $[                                        ]

TOTAL POSTPETITION DELINQUENCY:                    $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B).  More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is  ☐ prepetition  ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents.  Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (*specify*):




18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:
      1. Case name: _____
         Chapter: _____   Case number: _____
         Date dismissed: _____   Date discharged: _____   Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not  granted.

      2. Case name: _____
         Chapter: _____   Case number: _____
         Date dismissed: _____   Date discharged: _____   Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not  granted.

      3. Case name: _____
         Chapter: _____   Case number: _____
         Date dismissed: _____   Date discharged: _____   Date filed: _____
         Relief from stay regarding the Property  ☐ was ☐ was not  granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 10                              **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

9·14·18                   Monica Lash
_____          _____          _____
Date                     Printed name                      Signature

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                          Page 11                          **F 4001-1.RFS.RP.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4665 MacArthur Court, Ste. 200, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/14/2018  , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Emilia N. McAfee, Counsel for Debtor: emilia@welegalapc.com
United States Trustee: ustpregion16.rs.ecf@usdoj.gov
Robert Whitmore, Chapter 7 Trustee: rswtrustee@yahoo.com

☐ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On (*date*) 09/14/2018  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Mark D. Houle
3420 Twelfth Street, Suite 365 / Courtroom 303
Riverside, CA 92501-3819
COURT

☒ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 09/14/2018 | Jodi Miller | /s/ Jodi Miller |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re (SHORT TITLE) TINA M. COCA | | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 6:18-bk-16905-MH |

**ADDITIONAL SERVICE INFORMATION** (if needed):

Tina M Coca
2345 Cornell Cir
Corona, CA 92881-6625
DEBTOR

Emilia N McAfee
WE-Legal, APC
11801 Pierce St Ste 200
Riverside, CA 92503
COUNSEL FOR DEBTOR

Robert Whitmore (TR)
3600 Lime St Ste 616
Riverside, CA 92501
CHAPTER 7 TRUSTEE

New Penn Financial
Attn: Managing Agent
400 Chemical Road, Ste. 200
Plymouth Meeting, PA 19462
SENIOR LIENHOLDER

New Penn Financial
Attn: CSC Lawyers Inc. Service, Agent for Service
2710 Gateway Oaks Drive Ste 150N
Sacramento, Ca 95833
SENIOR LIENHOLDER

Shellpoint Mortgage servicer for New Penn Financial
Attn: Managing Agent
75 Beattie Place, Ste. 300
Greenville, SC 29601-2138
SENIOR LIENHOLDER

Solarmax Renewable Energy
Attn: Jessie W. Chen, Agent for Service
3080 12th Street
Riverside, CA 92507-4903
JUNIOR LIENHOLDER



**COMMANDCREDIT PLUS®**
**HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT**

This Agreement governs the terms of the CommandCredit Plus Home Equity Line of Credit ("Account") between
TINA M COCA _____ and TCF National Bank.
In this Agreement the words "you," "your," and "Borrower" mean each person and all persons who sign this Agreement as
Borrower.  The words "we," "us," and "TCF" mean TCF National Bank, 2508 South Louise Avenue, Sioux Falls, SD 57106
and any successor or assign or subsequent holder of this Agreement.

## SUMMARY OF TERMS

| | |
|---|---|
| Date of this Agreement | 10/16/2013 |
| Credit Limit | $95,853.00 |
| Draw Period | 10 Years |
| Repayment Period | 20 Years |
| The Property that secures the payment of this Account is | 2345 CORNELL CIRCLE<br>CORONA CA 92881-6625<br>(the "Property") |
| Estimated Beginning Index Rate | 3.250 |
| Margin | 1.990 |
| Estimated Beginning Daily Periodic Rate | .01436 % |
| Estimated Beginning ANNUAL PERCENTAGE RATE | 5.240 % |
| Minimum Annual Percentage Rate | .51 percentage points below your beginning Annual Percentage Rate, or 4.99%, whichever is greater, unless your beginning Annual Percentage Rate is less than 4.99%; then your minimum Annual Percentage Rate will be equal to your beginning Annual Percentage Rate. |
| Maximum Annual Percentage Rate | 18.000 % |
| Due Date | Payments will be due on the 23rd day of each month. |
| Final Payment Due Date | 10/21/2043 |
| Annual Maintenance Fee | $50.00 |
| Early Termination Fee (Finance Charge) | $475.00 |
| Other Fees and Charges | See the section called "General Terms of the Account" |

**Closing Costs**

| | | |
|---|---|---|
| Appraisal Administrative Review | $ 160.00 | (Finance Charge) |
| Appraisal Risk Evaluation | $ 13.00 | |
| Credit Bureau Report | $ 1.09 | |
| Flood Determination | $ 6.00 | |

EXHIBIT 1 _____

001

TCF COMMANDCREDIT PLUS®
HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

**GENERAL TERMS OF THE ACCOUNT**

**Definitions.** The following definitions apply in this Agreement:

"Account Balance" has the meaning stated in the section called "Your Promise to Pay."

"Advances" has the meaning stated in the section called "Your Promise to Pay."

"Annual Percentage Rate" has the meaning stated in the section called "Variable Interest Rate."

"Billing Cycle" has the meaning stated in the section called "Minimum Payments."

"Checks" has the meaning stated in the section called "How to Obtain Advances."

"Daily Periodic Rate" has the meaning stated in the section called "Variable Interest Rate."

"Draw Period" has the meaning stated in the section called "Draw Period and Advances."

"Index" has the meaning stated in the section called "Variable Interest Rate."

"Minimum Payment" has the meaning stated in the section called "Minimum Payments."

"Mortgage/Deed of Trust" has the meaning stated in the section called "Mortgage/Deed of trust."

"Payment Change Date" has the meaning stated in the section called "Minimum Payments."

"Principal Balance" has the meaning stated in the section called "Draw Period and Advances."

"Property" has the meaning stated in the section called "Mortgage/Deed of Trust."

"Repayment Period" has the meaning stated in the section called "Draw Period and Advances."

Other capitalized terms in this Agreement, not otherwise defined, have the meaning stated in the Summary of Terms on the first page of this Agreement. Terms following a checkbox apply only if the box is checked.

**Your Promise to Pay.** You promise to pay TCF all amounts we loan you under this Agreement ("Advances"), together with all interest, charges, fees, and other amounts you owe under this Agreement or the Mortgage/Deed of Trust that secures this Account. The "Account Balance" is the sum of all unpaid: (1) Advances; (2) accrued interest; and (3) charges, fees, and other amounts you owe under this Agreement or the Mortgage/Deed of Trust.

**Draw Period and Advances.** This is a revolving account. You may request Advances during the Draw Period. The "Draw Period" begins on the date of this Agreement and ends on the last day of your 120th Billing Cycle. However, we are not required to make any Advances under this Agreement (and you agree that you will not use your Account) until you and anyone who has signed the Mortgage/Deed of Trust have confirmed to TCF that no one with the right to cancel this Agreement under the Federal Truth-in-Lending Act has canceled.

You agree to never allow the Principal Balance to exceed your Credit Limit at any time during the Billing Cycle. The "Principal Balance" is the unpaid balance of all Advances plus all accrued but unpaid charges, fees, and other amounts you owe under this Agreement or the Mortgage/Deed of Trust that we charge to your Account. The Principal Balance does not include unpaid interest. During the Draw Period you can request Advances up to the Credit Limit, repay any portion of the Advances, and again obtain Advances up to the Credit Limit. You will not write any Check, use your CommandLine Card, or otherwise request any Advance that would cause the Principal Balance to exceed your Credit Limit. We do not have to pay any Check, or authorize or pay a CommandLine Card transaction, or make an Advance that would cause the Principal Balance to exceed your Credit Limit, but if we do, you will pay us the excess as soon as we ask you to. You will pay an overline charge of $20 for each Billing Cycle in which: (1) the total of unpaid Advances at any time during the Billing Cycle exceeds your Credit Limit; or (2) you attempt to exceed your Credit Limit but do not exceed it.

After the Draw Period, your right to obtain Advances ends and the Repayment Period begins. The "Repayment Period" begins on the day after the end of the Draw Period and ends on the Final Payment Due Date. If you have no outstanding Principal Balance at the end of the Draw Period, your Account will be closed at that time.

**Interest.** You will pay interest (which is a finance charge) on the Principal Balance outstanding from time to time as provided in this Agreement. We calculate the interest for each day of the Billing Cycle by multiplying the Daily Periodic Rate for the day times the Principal Balance at the end of the day. We calculate the Principal Balance for a day by: (1) taking the Principal Balance at the beginning of the day; (2) subtracting any payments or credits that we apply against the Principal Balance that day; and (3) adding any new Advances and other amounts authorized under this Agreement or the Mortgage/Deed of Trust that we apply (post) to the Principal Balance that day. The Principal Balance can never be less than zero. We calculate the interest for the Billing Cycle by adding the interest for each day in the Billing Cycle. You pay no interest on unpaid interest (interest is not added to the Principal Balance). The interest begins to accrue immediately for any Advance or other amount we add to the Principal Balance. If there is any Principal Balance outstanding, there is no time period in which you will not be charged a finance charge.

**Variable Interest Rate.** Your interest rate, and the corresponding Daily Periodic Rate and Annual Percentage Rate, can change monthly during the term of this Agreement (both the Draw Period and the Repayment Period). The "Annual Percentage Rate" is the cost of your credit as a yearly rate. The Annual Percentage Rate includes only interest and not other costs. The "Daily Periodic Rate" is the interest rate for a day that we calculate by dividing the annual interest rate in effect for the day by 365 (366 in a leap year).

There is no limit on how much your interest rate can change, except that it will not be lower than the Minimum Annual Percentage Rate or higher than the Maximum Annual Percentage Rate. Any increase or decrease in your interest rate will cause an increase or decrease in the corresponding Daily Periodic Rate and Annual Percentage Rate, and may cause an increase or decrease in your Minimum Payments.

Your annual interest rate will be equal to the Index plus or minus (as applicable) the Margin. "Index" means, for all days during a Billing Cycle, the highest U.S. prime rate published in *The Wall Street Journal* (currently under "Money Rates") any time during that Billing Cycle. This means that the Index that applies for the entire Billing Cycle will not be determined until after the end of the Billing Cycle. The Index may not be the lowest or best rate offered by us or other lenders. If the Index becomes unavailable, we will pick a new Index and margin and send you notice of the change. Subject to applicable law, the selection of the new Index will be in our sole discretion.

Once the Index is determined for a Billing Cycle, your interest rate for each day in that Billing Cycle will equal the Index plus or minus the Margin. Regardless of any changes in the Index, the interest rate and corresponding Annual Percentage Rate will not be lower than the Minimum Annual Percentage Rate or higher than the Maximum Annual Percentage Rate.

Notwithstanding anything in this Agreement to the contrary, the interest rate and corresponding Annual Percentage Rate in effect on the Final Payment Due Date (or any extension of the final payment due date we agree to) or the date we require you to immediately pay the Account Balance in full, will apply until you pay the Account Balance in full. The interest rate will not change after that date.

Date  10/16/2013  Time    09:28:54          Page 2 of 12          RLU      08/16/2013

TCF COMMANDCREDIT PLUS®
HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

Your estimated beginning interest rate and corresponding Daily Periodic Rate and ANNUAL PERCENTAGE RATE are shown in the Summary of Terms. These estimates are based on the estimated beginning Index shown in the Summary of Terms. These are estimates only. Your beginning interest rate and corresponding Daily Periodic Rate and Annual Percentage Rate will be higher if a higher Index is published any time during a Billing Cycle that includes the date you signed this Agreement.

**Minimum Payments.** Your minimum payments under this Agreement for each Billing Cycle are as follows ("Minimum Payment"). During the Draw Period, your Minimum Payment for each Billing Cycle will be equal to the interest you owe for the Billing Cycle, or $50, whichever is greater. Making the Minimum Payment during the Draw Period will not reduce the Principal Balance.

During the Repayment Period, your Minimum Payment for each Billing Cycle will initially be the greater of: (i) the amount that would be large enough to repay the Principal Balance plus interest in full by the Final Payment Due Date based on the interest rate in effect for the Billing Cycle immediately before the start of the Repayment Period; or (ii) $100. However, your Minimum Payment will never exceed your Account Balance.

Your Minimum Payment will change on each anniversary of the start of the Repayment Period ("Payment Change Date") based on changes in the Index during the previous year.  On each Payment Change Date, we will determine the amount of your monthly payment that would be large enough to repay the following in full by the Final Payment Due Date: (1) the Principal Balance on the Payment Change Date; plus (2) any unpaid interest since the last Payment Change Date; plus (3) all interest from the Payment Change Date until the Final Due Payment Due Date based on the interest rate in effect for the Billing Cycle immediately before the Payment Change Date. Your new Minimum Payment on each Payment Change Date will be the greater of this amount or $100.

Making the Minimum Payment during the Repayment Period may not be enough to cover all your interest for the Billing Cycle if the Index increases after the most recent Payment Change Date, and may not reduce the Principal Balance.  On the Final Payment Due Date, you must pay any remaining Account Balance. This payment may be substantially higher than your regular monthly payment and is sometimes called a "balloon" payment.

In addition to the amount calculated above, your Minimum Payment will include any: (1) late charges and returned payment charges; (2) past due amounts; (3) unpaid charges and fees not included in the Principal Balance; and (4) amounts that exceed your Credit Limit. If your Account Balance is less than the Minimum Payment as calculated above, then the Minimum Payment for that Billing Cycle is equal to your Account Balance.

At the end of each Billing Cycle, we will calculate your Minimum Payment for the Billing Cycle. You agree to pay the Minimum Payment for the Billing Cycle by the payment due date for that Billing Cycle.

A "Billing Cycle" is each calendar month, so the actual number of days in a Billing Cycle can fluctuate from month to month.  Your first Billing Cycle will run from and include the first date that you may obtain an Advance under this Agreement and will end on the last day of that month. All subsequent Billing Cycles will run from and include the day after the ending date of the previous Billing Cycle.

You must make all payments at the address we designate in the monthly statement for that Billing Cycle. You must make all payments in U.S. Dollars. If you deliver any payments to an address other than the designated payment address, we will not apply them to your Account Balance until we receive them at the designated payment address. You may prepay this Agreement at any time.

**Application of Payments.** During the Draw Period we may apply each of your payments as follows: (1) first to any billed and unpaid interest; (2) then to any billed and unpaid fees not included in the Principal Balance, such as late fees or returned payment fees; and (3) then any remaining amount to the Account Balance.

Although we apply your payments during the Draw Period to the Principal Balance as of the date we receive them at the designated payment address, we may make that amount available for additional Advances only when we collect the funds. All credits for payments on your Account are subject to final payment by the institution on which the payment is drawn.

During the Repayment Period we may apply each of your payments as follows: (1) first to any accrued and unpaid interest; (2) then to the required payments of the Principal Balance; (3) then to any billed and unpaid other fees or charges that are not included in the Principal Balance; and (4) then any remaining amount to the Account Balance.

Unless otherwise prohibited by law, we apply payments in the order in which they are due.

**How to Obtain Advances.** We will provide you with CommandCredit Plus Checks ("Checks") to obtain advances. If permitted by law, we may also offer you a CommandLine® Card to obtain Advances. If you request and obtain a CommandLine Card, we may at any time and in our sole discretion discontinue your ability to obtain Advances using the CommandLine Card. If we do, you will still be able to obtain Advances using your CommandCredit Checks.

You may request Advances during the Draw Period by writing Checks or using a CommandLine Card, if you have requested and received one.  We will add each Advance to the Principal Balance immediately.  Each of you and all of you are fully responsible for all Advances even if only one of you signs a Check or uses a CommandLine Card. You may not use an Advance to make payments on your Account.

The following daily limits apply to transactions with a CommandLine Card: (1) a maximum of 10 transactions per day; (2) a maximum of $10,000 per day or your available Credit Limit, whichever is less; and (3) a maximum of $500 per day or your available Credit Limit, whichever is less at automated teller machines (ATMs").  Please note that some ATMs may have lower daily limits.  We may, at our option, authorize and pay any CommandLine Card transactions that exceed these limits, but if we do, we may still refuse other CommandLine Card transactions that exceed these limits.

We do not charge an access fee for CommandLine Card transactions at ATMs.  Third Parties may charge access or other transaction fees for CommandLine Card transactions at any ATMs other than TCF ATMs and at non-TCF locations or facilities.  A TCF ATM is any ATM with TCF's name on it.

To help combat fraud, we do not allow the use of CommandLine Cards in countries other than the United States without our permission in advance.  If you want to use a CommandLine Card in countries other than the United States, please contact us beforehand at 1-800-950-7332 (Minneapolis, Minnesota area residents should call 651-228-8014) to request permission.  If we approve your request, you may use your CommandLineCard outside the United States for the time period we approve.

**Annual Maintenance Fee.** You must pay an Annual Maintenance Fee for each full or partial 12-month period during the Draw Period. You must pay this fee whether or not you use your Account at any time during the year and whether or not you or we terminate, restrict, or reduce the Account anytime during the year. The Annual Maintenance Fee is billed and is due and payable with your first monthly statement and on each annual anniversary of this Agreement.

**Late and Returned Payment Charges.** If we do not receive the Minimum Payment in full on or before the 10th day after the due date, you must pay a late charge of 5% of the Minimum Payment, or $25, whichever is greater. If the 10th day is a Saturday, Sunday, or federal legal holiday, we will not charge you a late charge if we receive the Minimum Payment in full on the next day that is not a Saturday, Sunday, or legal holiday.

We will charge you $25 for each check or other payment instrument (including electronic payment) that is rejected or returned unpaid.



003

TCF COMMANDCREDIT PLUS®
HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

**Closing Costs.** You must pay the Closing Costs on the date of this Agreement. If not paid in cash, you may pay the Closing Costs by taking an Advance.

**Early Termination Fee.** If you or we cancel your Account within the first three years after the date of this Agreement, you will pay us an Early Termination Fee (Finance Charge). However, if the cancellation is because you refinanced this Agreement with us, we will not charge you an Early Termination Fee.

**Reconveyance or Release Fee.** We may charge a fee for recording a release of the Mortgage/Deed of Trust as allowed by applicable law.

**Administrative/Servicing Fees.** You must pay us the then-current fee for any services you request after the date of this Agreement (unless prohibited by law). You will be notified of the amount of the fee at the time you request the service. You agree that such fees may be charged as Advances to the Account.

## SECURITY

**Mortgage/Deed of Trust.** You give us a mortgage or deed of trust ("Mortgage/Deed of Trust") on real estate Property you own or have an interest in ("Property") to protect us if you default under this Agreement. You agree to comply with the terms of the Mortgage/Deed of Trust in addition to the terms of this Agreement.

You will assist us and do whatever is necessary for us to obtain a Mortgage/Deed of Trust on the Property and to protect our interest in the Property. For example, you will make sure anyone who has an interest in the Property has signed the Mortgage/Deed of Trust, and will do whatever is necessary to make sure the Mortgage/Deed of Trust is properly recorded. We will not release the Mortgage/Deed of Trust until you have paid us everything you owe us under this Agreement and the Mortgage/Deed of Trust, and you or we terminate your Account. You will pay any taxes on the Property when due and keep the Property free of liens that we have not approved and that have priority over our lien.

**Insurance.** You will keep the Property insured against hazards including fire (including extended coverage) and any other risks we name. Insurance is not required in excess of the replacement value of the Property (buildings and improvements). You have the option of providing the insurance through an insurance policy you already have or through a policy you will buy and pay for yourself. You may buy the insurance from anyone you want. You will have the insurance company name us in the policy as a loss payee or mortgagee. You will give us proof of coverage from time to time at our request. The type of proof must be acceptable to us. You will instruct the insurance company to pay any claims directly to us and to notify us in writing at least 30 days before ending coverage. You assign any insurance payments to us as additional security. You give us the right to sign your name (called a "power of attorney") on any insurance payments so that we can apply those payments to the amount you owe under this Agreement and the Mortgage/Deed of Trust.

**Notice:** Unless you provide us with evidence of the insurance coverage required by this Agreement, we may purchase insurance at your expense to protect our interests in the Property. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Property. You may later cancel any insurance we purchase, but only after providing us with evidence that you have obtained insurance as required by this Agreement. If we purchase insurance, you will be responsible for the cost of that insurance, including interest and any charges we may incur in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the Principal Balance. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Our Right to Take Action.** If you fail to perform any of your duties described in this section called "Security," then we may take any steps necessary to protect our interest in the Property.

For example, we may pay any new mortgages, deeds of trust, taxes, and liens on the Property, insure the Property, enter the Property to make repairs and secure the Property if abandoned, and pay any protective advances allowed under the Mortgage/Deed of Trust. You give us the right to sign your name (called a "power of attorney") on documents as necessary to protect our interest in the Property.

If someone (you or anyone else) begins a legal proceeding that may significantly affect our rights in the Property (for example, a legal proceeding in bankruptcy or to condemn the Property), then we may take any steps necessary to protect our interest in the Property. For example, we may pay any prior mortgages, deeds of trust, taxes, or liens on the Property, appear in court, and pay reasonable attorneys' fees.

If we make payments or advance any money under this section, they will be Advances on your Account. We may make such Advances even if they cause the Principal Balance to exceed your Credit Limit. If we pay an obligation, we will have all of the rights that the person we paid would have had against you.

Our right to take these actions is in addition to, and does not replace, any other remedies we have under this Agreement, the Mortgage/Deed of Trust, or applicable law.

## OUR RIGHT TO RESTRICT OR REDUCE THE LINE OF CREDIT

We may restrict your ability to obtain further Advances, or we may reduce your Credit Limit, during any period in which any one or more of the following happens:

1.  The value of the Property declines significantly below its appraised value when you and we entered into this Agreement.

2.  We reasonably believe that you will not be able to meet the repayment terms of this Agreement due to a material change in your financial circumstances.

3.  You fail to comply with any material obligation under this Agreement, which includes but is not limited to the following: (a) you represent that the Property is owner-occupied when it is not; (b) you fail to provide us with updated financial information as required by this Agreement; (c) you refuse to allow us or our agent access to the Property to perform an inspection or appraisal; or (d) you fail to comply with government orders, laws, regulations or ordinances relating to use or occupancy of the Property.

4.  Government action prevents us from imposing the Annual Percentage Rate provided for in this Agreement, or impairs the priority of our security interest in the Property such that the value of our lien is less than 120 percent of your Credit Limit.

5.  A regulatory agency has notified us that continued Advances would constitute an unsafe and unsound practice.

6.  The highest Annual Percentage Rate permitted under the Agreement is reached.

004

TCF COMMANDCREDIT PLUS®
HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

## DEFAULT

**Default.** You will be in default under this Agreement if any of the following happens:

1. You commit fraud or make any material misrepresentation in connection with this Agreement. For example, you make a false, incomplete, inaccurate, or misleading statement to us in any credit application or affidavit. This includes, among other things, information regarding: (a) the ownership of the Property; (b) any mortgages, deeds of trust, liens, or other claims by third parties against the Property; (c) the amount you owe for any items that could create liens or other claims by third parties against the Property; (d) the legal description of the Property; and (e) any contracts or other agreements affecting the Property.

2. You do not meet the repayment terms of this Agreement.

3. Your action or inaction adversely affects the Property (or our rights in the Property. For example: (a) you transfer title to the Property or sell the Property without our permission; (b) the Property is taken by eminent domain; (c) you fail to maintain required insurance on the Property; (d) you fail to pay taxes on the Property; (e) you permit the filing of a lien on the Property that is senior to that held by us unless we have specifically agreed in writing to the filing of the senior lien; (f) a prior lien holder on the Property forecloses; (g) you are the sole borrower and you die; (h) you commit waste or otherwise destructively use or fail to maintain the Property in a manner that adversely affects the Property; (i) you use the Property for an illegal purpose that subjects the Property to seizure; (j) you move out of the Property and that action adversely affects the Property; or (k) you fail to cooperate in getting a recorded lien on the Property released.

**Our Remedies If You Default.** If you are in default under this Agreement, we may take any of the actions described below. We do not have to give you notice or demand before taking any of these actions unless the law or the terms of the Mortgage/Deed of Trust requires us to give you notice or demand. We may:

1. Require you to pay everything you owe under this Agreement immediately (after giving you any notice of default and opportunity to cure the default required by applicable law).

2. Reduce your Credit Limit or terminate or restrict your ability to obtain further Advances.

3. Exercise our rights under the Mortgage/Deed of Trust.

4. Exercise any rights we have under any applicable federal or state law or other agreement you have with us.

5. Demand security (collateral), additional security, or additional parties to be obligated to pay this Agreement as a condition for not using any other remedy.

These remedies are in addition to, and do not replace, any other remedies we have under this Agreement, the Mortgage/Deed of Trust or applicable law. If we choose any one of these remedies, we do not give up our right to use any other remedy later.

**Costs and Attorneys' Fees.** Unless prohibited by law, you will pay all of our reasonable court costs and fees for an attorney who is not our salaried employee in enforcing our duties or protecting our rights under this Agreement or the Mortgage/Deed of Trust. Examples are: (1) collecting the amount you owe under this Agreement; (2) foreclosing the Mortgage/Deed of Trust; (3) taking any other legal actions against you; or (4) protecting our rights in eminent domain, forfeiture or similar proceedings involving the Property. Court costs and attorney fees include those awarded by a court under the Bankruptcy Code.

**Termination and Restriction of Additional Extensions of Credit.** You or any other Borrower may cancel the Account (and therefore terminate your ability and the ability of all other Borrowers to obtain further Advances) by notifying us in writing. Although any one Borrower may cancel the Account, all Borrowers must request reinstatement in writing before we will reinstate the Account. You may not cancel the Account, and we will not release the Mortgage/Deed of Trust, unless you have paid everything you owe under this Agreement. We may cancel the Account (and therefore terminate your ability and the ability of all other Borrowers to obtain future Advances) as provided in the section called "Our Remedies If You Default." We do not have to pay any Check, authorize or pay any CommandLine Card transaction, or make an Advance if you cancel the Account or if we terminate your ability to obtain further Advances. However, if we do, you will pay the amount we pay, authorize, or advance as required under this Agreement.

## ADDITIONAL TERMS OF YOUR ACCOUNT

**Financial Information.** Whenever we ask, you will furnish us with current information about your financial condition (including income, assets, and liabilities) and the Property securing this Agreement. We may obtain and use credit information about you from others at any time, including but not limited to obtaining credit reports. We may obtain and use this information at any time, and from time to time until your Account is paid in full. We may report information about your credit with us to others at any time. See TCF's Privacy Policy for information on your right to direct us not to share certain information.

**Furnishing Negative Information to Credit Reporting Agencies.** We may report information about your Account and your performance under this Agreement to credit bureaus. Late payments, missed payments, or other defaults by you under this Agreement may be reflected in your credit report. If at any time you feel that any information we may furnish to any consumer reporting agency is inaccurate, or if you believe that you have been the victim of identity theft in connection with any Advance, write to us at the following address (or such other address as we may later provide you):

TCF NATIONAL BANK
ATTN CUST SERVICE DEPT
MAIL CODE 002-01-P
101 EAST FIFTH ST SUITE 101
ST PAUL MN  55101

In your letter: (a)  provide your name and account number; (b) identify the specific information that is being disputed; (c) explain the basis for the dispute; and provide any supporting documentation you have that supports your claim. If you have been the victim of identity theft, we may ask you to submit an affidavit of identity theft or identity theft report.

**Tax Deductibility.** You should consult a tax advisor regarding the deductibility of interest and charges for your Account.

**Your Additional Obligations.** You will comply with the terms of any other agreement you have with us.

**Change of Address.** We will send monthly statements and other notices to you at the most recent address shown for you in our records. You will send us written notice at least 15 days before the end of the Billing Cycle if you want us to change your address for these monthly statements and notices. If your Account is a joint account, we will send statements and notices to only one of you. You will notify us immediately in writing if you move to a different address.

005

TCF COMMANDCREDIT PLUS®
HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

**Liability for Unauthorized CommandLine Card Use.** You may be liable for the unauthorized use of the CommandLine Card. You will not be liable for unauthorized use that occurs after you notify us: (1) either orally or in writing at:

TCF NATIONAL BANK
ATTN CUST SERVICE DEPT
MAIL CODE 002-01-P
101 EAST FIFTH ST SUITE 101
ST PAUL MN 55101

or (2) by calling (651) 228-6014 or 1-800-950-7332.

**Service of Process.** You must make service of any legal process against us at the following address (or such other address as we may later provide you):

TCF NATIONAL BANK
ATTN LEGAL DEPT
200 LAKE STREET EAST
WAYZATA MN 55391

**Changes, Waivers, Assignments, Delay in Enforcement, and Restrictive Endorsements.** This Agreement cannot be changed unless we agree in writing. However, we may change the terms of this Agreement if: (1) you specifically agree to the change at the time in writing; (2) the change will unequivocally benefit you; (3) the change consists of a change in the Index and Margin because the previous Index becomes unavailable; or (4) the change is insignificant. We will make all changes in compliance with applicable law. The changes will apply to amounts you owe when the change became effective and to Advances after that time.

We may transfer or assign this Agreement and the Mortgage/Deed of Trust to a third party. If we do, the third party will have all our rights under this Agreement and the Mortgage/Deed of Trust.

You give up your right to require us to: (1) demand payment of amounts due ("presentment"); (2) obtain official certification of nonpayment ("protest"); (3) notify you that amounts due have not been paid ("notice of dishonor"); or (4) give you any other notice except as required in this Agreement.

We can choose not to enforce or to delay enforcement of our rights under this Agreement or applicable law without losing them. For example, we may accept late payments from you and still have the right to require that future payments be made on time. If we release any of you from this Agreement, the rest of you will not be released. If we exchange or release any Property securing this Agreement, you will not be released. We do not have to use our legal remedies against one of you before we use our legal remedies against any of you. Each of you agrees to any renewals or extensions to this Agreement that we give to any of you.

We may accept any form of payment containing a restrictive endorsement without losing any of our rights under this Agreement or applicable law. Our acceptance of payments with the words "paid in full" or any words to that effect will not constitute an accord and satisfaction or a waiver of any rights we have to receive full payment of all amounts owed under this Agreement. The section called "Your Billing Rights" explains how you should contact us if you think there is a problem on a monthly statement.

**Agreement Binding.** This Agreement is binding on your heirs and your legal representatives. This Agreement and the Mortgage/Deed of Trust are the final and complete expression of the agreement between you and us. The Mortgage/Deed of Trust is incorporated into and is a part of this Agreement.

**More Than One Signer.** If more than one person signed this Agreement as a Borrower or Co-Borrower, each of you is responsible individually, and all of you are responsible together, for all obligations owed to us under this Agreement. Your obligations are "joint and several."

**Severability.** If any provision of this Agreement is found to be unenforceable, all other provisions will remain in full force and effect.

**Headings and Captions.** Section and subsection headings and captions are for convenience and reference only. They do not limit or govern the meaning or interpretation of this Agreement.

**Governing Law.** TCF is a national bank with its main office in South Dakota. Therefore, you agree that this Agreement and all disputes relating in any way to this Agreement or your Account will be governed and interpreted by: (1) federal law applicable to national banks; and (2) to the extent state law applies and is not preempted, the substantive and procedural law (but not the conflict of law rules) of the State of South Dakota. Federal law governs all fees and charges, including interest, that relate to this Agreement. Under Section 85 of the National Bank Act, we refer to South Dakota substantive law to determine the highest rate of interest permissible for any competing lender.

ADDITIONAL TERMS OF YOUR ACCOUNT AND STATE DISCLOSURES

**For California Borrowers:**

NOTICE TO COSIGNER (Traducción en Inglés Se Requiere Por La Ley)

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collections costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.

This notice is not the contract that makes you liable for the debt.

(Cosigner signature required on the next page.)

**For California Borrowers continued:**

AVISO PARA EL FIADOR (Spanish Translation Required By Law)

Se le esta pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendra que pagarla. Esté seguro de que usted podra pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

| N/A | N/A |
|-----|-----|
| Cosigner | Cosigner |
| N/A | N/A |
| Date | Date |

**No Foreign Language.** You acknowledge and agree that the terms of this Agreement were reviewed and negotiated with you in English.

**For Connecticut Borrowers:**

TCF cannot provide you with a CommandLine Card to obtain Advances.

**For Iowa Borrowers:**

This is a consumer credit transaction.

**For Kentucky Borrowers:**

You may pay the unpaid balance of this Account in whole or in part at any time.

NOTICE OF FREE CHOICE OF AGENT AND INSURER

The Kentucky Insurance Code, KRS 304.12-150, provides that when insurance is required according to the terms of a debt or loan you have the right to choose the agent and insurer through or by which your insurance is to be placed. Your free choice of an agent and insurer and an adequate insurance policy cannot be refused. If you, as a consumer, are denied your right to choose, or if an adequate insurance policy is refused, you should notify the Commissioner of Insurance at P.O. Box 517, Frankfort, Kentucky 40602 or 1-800-595-6053.

By signing below, you acknowledge that you have received a copy of the pamphlet called "What Kentucky's Fair Housing Law Means" and a notice called "Kentucky Homeownership Protection Center Notification to Homeowners."

| N/A | | N/A | |
|-----|-----|-----|-----|
| Signature | Date | Signature | Date |

**For Maine Borrowers:**

The section in this Agreement called "Costs and Attorney Fees" is amended to read as follows:

You will pay us our court costs, reasonable attorney fees, legal expenses, and other reasonable costs that we incur to foreclose the Mortgage/Deed of Trust and realize on our security interest in the property.

**For Maryland Borrowers:**

Notwithstanding anything in this Agreement to the contrary, you may buy hazard insurance covering the Property from anyone you choose.

Under Maryland law, a recordation tax will be imposed on the Mortgage/Deed of Trust. BY LAW, YOU HAVE THE OBLIGATION TO PAY THIS TAX. The current tax rate for the County/City where you live is shown in the Summary to Terms, as is the initial tax for recording the Mortgage/Deed of Trust. You may pay this tax in either of the following ways:

You may pay the tax computed on the amount of your Credit Limit. If you pay this amount, your total tax liability is satisfied regardless of the amount you actually borrow.

You may pay the tax computed on each Advance you actually receive under this Agreement (even if the total amount borrowed and reborrowed exceeds the amount of your Credit Limit). Within 7 days after receiving each Advance, you must file with the Clerk of the Court with which the Mortgage/Deed of Trust has been recorded a verified statement of the amount of additional debt secured and must pay the tax computed on such amount at that time. To the extent that any Advance you receive is applied to repay an existing debt secured by the Mortgage/Deed of Trust, the tax is not due on such Advance.

FAILURE TO PAY THE TAX AS DESCRIBED ABOVE COULD SUBJECT YOU TO A FINE OF NOT MORE THAN $500.00 OR TO A SENTENCE OF NOT MORE THAN SIX MONTHS IN JAIL.

Initial Recordation Tax $_____

Recordation Tax Rate $_____ per $1,000.00 of Indebtedness incurred.

**For Missouri Borrowers:**

### NOTICE UNDER MISSOURI COLLATERAL PROTECTION ACT

Unless you provide evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

For the purpose of the foregoing notice and as utilized therein, the word or words: (a) "you" and "your" means Borrower; (b) "we" and "our" mean the lender, TCF; (c) "your agreement with us" and "our Agreement" mean the Mortgage/Deed of Trust; (d) "collateral" means the Property; and (e) "your total outstanding balance or obligation" mean the amount you owe under this Agreement. Anything in the Mortgage/Deed of Trust to the contrary notwithstanding, if Borrower shall fail to provide the lender with evidence of the insurance coverage required by the Mortgage/Deed of Trust and the lender shall purchase collateral protection insurance (as defined in RSMo. § 427.115(2)), the repayment of the costs of such collateral protection insurance, including interest at the rate provided for in this Agreement, and any other costs and charges imposed by the lender in accordance with the Mortgage/Deed of Trust in connection with the placement of insurance coverage shall, as provided in Section 3(1) of RSMo. § 427.125, be paid in full by Borrower to the lender within thirty (30) days after the date the lender notifies Borrower that collateral protection insurance has been purchased by the lender.

### MISSOURI NOTICE CONCERNING ORAL CREDIT AGREEMENTS

ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT, INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT, ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING AND IN THE MORTGAGE/DEED OF TRUST, WHICH ARE THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT. BY SIGNING BELOW, YOU AND WE AGREE THAT THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN US.

**For Nebraska Borrowers:**

TCF cannot provide you with a CommandLine Card to obtain advances.

A credit agreement must be in writing to be enforceable under Nebraska law. To protect you and us from any misunderstandings or disappointments, any contract, promise, undertaking, or offer to forebear repayment of money or to make any other financial accommodation in connection with this loan of money or grant or extension of credit or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit, must be in writing to be effective.

**For New Hampshire Borrowers:**

### Attorneys' Fees

Reasonable attorneys' fees shall be awarded to you if you prevail in (a) any action, suit or proceeding brought by us, or (b) any action brought by you. Further, if you successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by us, the court may withhold from us the entire amount or such portion of our attorneys' fees as the court considers equitable.

### Requests for Payment Receipt

You may request a receipt for any payment you have made on your account. The request must be in writing and must:

    (1)   State the name of the account holder or account holders requesting a receipt;
    (2)   State the account number assigned to the home equity line of credit;
    (3)   State the property address of the property subject to the mortgage; and
    (4)   Be signed by the account holder or account holders requesting the receipt.

The request must be sent by registered mail to the following address:

TCF NATIONAL BANK
ATTN CUSTOMER SERVICE
101 EAST 5TH ST SUITE 101
ST PAUL MN 55101

Upon receipt of your written request, we will provide you with a receipt stating the date of payment, the amount paid, the amount applied to interest on the loan and the amount applied to the principal.

**For New York Borrowers:**

TCF cannot provide you with a CommandLine Card to obtain Advances.

TCF COMMANDCREDIT PLUS®
HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

**For Oregon Borrowers:**

### NOTICE TO THE BORROWER

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

### WARNING

UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR CONTRACT OR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPERTY COVERAGE ELSEWHERE.

YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR CONTRACT OR LOAN BALANCE. IF THE COST IS ADDED TO YOUR CONTRACT OR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING CONTRACT OR LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.

THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABLITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.

### CREDIT AGREEMENTS

UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY US AFTER OCTOBER 3, 1989, CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE GRANTOR'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY US TO BE ENFORCEABLE.

**For Pennsylvania Borrowers:**

Notice to Borrower: This document contains provisions for a variable interest rate.

Under Pennsylvania law, we may not condition Advances or any extension of credit to you on your obtaining insurance from a particular agent or insurer.

The purchase of credit life, credit disability, credit accident and health or credit unemployment insurance is not a prerequisite to obtaining a mortgage loan.

**For Tennessee Borrowers:**

At any time, you may limit (lower) the amount of credit available to you under this Agreement to an amount less than the Credit Limit set forth above. To do this, any borrower or co-borrower who has executed this Agreement must deliver or send a letter to us indicating the amount of the lower Credit Limit you wish to have. In accordance with Tenn. Code Ann. Section 47-28-101 et seq., the notice must:

(1)  Name TCF National Bank as the creditor;
(2)  State specifically the reduced credit limit;
(3)  State the effective date of the limitation. The date cannot be sooner than (1) regular business day after the date of the service of the notice;
(4)  Identify with reasonable specificity the real property subject to the mortgage;
(5)  Give the account number assigned to the account of the open-end credit agreement;
(6)  Be signed by the borrower or borrowers requesting the lower Credit Limit.

We will then limit the amount available under this Agreement to the greater of the amount you have actually borrowed or the amount of your stated New Credit Limit. We shall be under no obligation to honor equity line checks or other draw requests that you or any other borrower makes which exceed this amount. YOU SHALL, HOWEVER, BE LIABLE TO US FOR ANY AMOUNTS WE ADVANCE UNDER THIS AGREEMENT IN THE EVENT WE HONOR DRAW REQUESTS WHICH EXCEED THE AMOUNT SPECIFIED IN THE NEW CREDIT LIMIT LETTER FOR ANY REASON INCLUDING OUR MISTAKE OR INADVERTENCE.

ON OR BEFORE THE EFFECTIVE DATE OF THE NEW CREDIT LIMIT LETTER, APPLICABLE LAW REQUIRES THAT YOU RECORD A COPY OF THE NEW CREDIT LIMIT LETTER WITH THE OFFICE OF THE REGISTER OF DEEDS IN THE COUNTY WHERE THE REAL PROPERTY SECURING YOU HOME EQUITY LINE OF CREDIT IS LOCATED. FOLLOWING THE RECORDING OF THE NEW CREDIT LIMIT LETTER, THE NEW CREDIT LIMIT LETTER AND THE NEW CREDIT LIMIT CANNOT BE RESCINDED.

**For Utah Borrowers:**

As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

TCF COMMANDCREDIT PLUS®
HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

**For Vermont Borrowers:**

### Credit Report Disclosure

By signing below, I authorize you to obtain credit reports on an ongoing basis about me from credit reporting agencies in connection with this extension of credit. You may obtain credit reports about me on an ongoing basis for any one or more of the following reasons: (1) reviewing the account; (2) increasing the credit line on the account; (3) taking collection action on the account; or, (4) any other legitimate purposes associated with the account.

### NOTICE TO CO-SIGNER

YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN.  IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

NOTICE: SEE PAGES 1 THROUGH 12 OF THIS AGREEMENT FOR IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS AND OTHER CONTRACT INFORMATION. BY SIGNING BELOW, YOU STATE THAT YOU HAVE READ AND AGREE TO ALL THE TERMS OF THIS AGREEMENT INCLUDING THE TERMS ON PAGES 1 THROUGH 12 OF THIS AGREEMENT. YOU AGREE THAT PAGES 1 THROUGH 12 ARE PART OF THIS AGREEMENT. BY SIGNING BELOW, EACH OF YOU ALSO STATES THAT YOU RECEIVED A COMPLETED COPY OF ALL 12 PAGES OF THIS AGREEMENT.

NOTICE TO CUSTOMER

(a)   DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON ALL TWELVE PAGES, EVEN IF OTHERWISE ADVISED.

(b)   DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.

(c)   YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.

_____          _____
Borrower TINA M COCA                       Co-Borrower

010

TCF COMMANDCREDIT PLUS®
HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

### COLLATERAL OWNER

In this section called "Collateral Owner," the terms "you" and "your" mean each person and all persons signing below as Collateral Owner. Other capitalized terms have the meaning stated in the CommandCredit Plus Home Equity Line of Credit Agreement between TINA M COCA _____ and TCF National Bank dated 10/16/2013 _____ ("Agreement"). A Collateral Owner is not the Borrower, but each Collateral Owner has (or may have) an interest in the Property that secures the Borrower's obligations under the Agreement.

By signing below as Collateral Owner, you agree to give us a Mortgage/Deed of Trust on the Property. You will give us this Mortgage/Deed of Trust to protect us if the Borrower defaults under the Agreement.

You agree to all the terms of the Mortgage/Deed of Trust, just as if you were the Borrower. You have no personal obligation to repay the debt, but you agree that we have all of the rights in the Property as described in the Agreement and Mortgage/Deed of Trust, as applicable. If the Borrower is in default under the Agreement and we require immediate payment of the Account Balance and all other amounts the Borrower owes under the Agreement, we may exercise our rights against the Property as described in the Agreement and Mortgage/Deed of Trust.

We are not required to do any of the following before enforcing our rights under this section called "Collateral Owner" or enforcing our rights under the Mortgage/Deed of Trust: (1) attempt collection or enforcement of the Agreement against the Borrower; (2) setoff against any of the Borrower's property or money in our possession; or (3) bring any legal action against the Borrower.

You will not be released from this section called "Collateral Owner," and the Mortgage/Deed of Trust will not be released, if: (1) we release any Borrower from personal liability under the Agreement; (2) we exchange or release any property securing the Agreement; (3) we agree to any extension or renewal of the Agreement; (4) the Borrower files bankruptcy or a petition in bankruptcy is filed against the Borrower; (5) the Borrower lacks authority to enter into the Agreement or the Agreement is unenforceable against the Borrower for any reason; (6) we are required to give back any of the Borrower's payments or turn over any of the Borrower's payments to a court; (7) we fail to give you any required notice; or (8) we fail to strictly enforce the terms of the Agreement or the Mortgage/Deed of Trust.

This section called "Collateral Owner" cannot be changed unless we agree in writing. We can elect not to enforce, or to delay enforcement of, our rights under the Agreement or this section without losing them. For example, we may accept late payments without waiving our right to require that future payments be made on time. We do not have to use our legal remedies against the Borrower before we use our rights under this section or the Mortgage/Deed of Trust.

We may transfer or assign the Agreement and our rights under this section to a third party. If we do, the third party will have all our rights under the Agreement and this section.

The Agreement, this section, and any Mortgage/Deed of Trust securing the Agreement are the final and complete expression of the Agreement between you and us.

Collateral Owner hereby waives all rights and defenses under any "one-action" or "anti-deficiency" law.

By signing below, you state that you agree to all the terms of this section called "Collateral Owner," and that you have received a completed and signed copy of the Agreement (including this section) and the Mortgage/Deed of Trust, if any.

_Jenn M Coca_ _____     _Tina M Coca_ _____     _10/17/13_ _____
Collateral Owner Signature                         Print Name                                    Date


_____     _____     _____
Collateral Owner Signature                         Print Name                                    Date

011

TCF COMMANDCREDIT PLUS®
HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

#### NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.

- The dollar amount of the suspected error.

- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your TCF savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

#### YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we did not make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we report you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50 of the questioned amount, even if your bill was correct.

#### SPECIAL RULE FOR COMMANDLINE CARD PURCHASES

If you have a problem with the quality of property or services that you purchased with your CommandLine Card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)  You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b)  The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

012

**DOC # 2013-0500176**
10/18/2013 03:47 PM Fees: $64.00
Page 1 of 14
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Recording Requested By
First American Title Company
Riverside Resale

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: MCASTRO

[Space Above This Line For Recording Data]

After Recording Return To:
TCF NATIONAL BANK
ATTN FILE REVIEW 002-01-P
101 EAST FIFTH ST STE 101
ST PAUL MN 55101

Account Number _____
Loan Originator's Name  CRAIG DOTY
Loan Originator Identifier _____

## HOME EQUITY LINE OF CREDIT DEED OF TRUST

Borrower has established a line of credit with Lender evidenced by Borrower's Home Equity Line of Credit
Agreement and Disclosure Statement dated the same date as this Security Instrument, and all renewals,
extensions, modifications, replacements and substitutions thereof (the "Agreement"). Lender has agreed
to make advances to Borrower under the terms of the Agreement. Such advances shall be of a revolving
nature and may be made, repaid and remade from time to time, with Borrower and Lender contemplating
a series of advances to be secured by this Security Instrument. The total outstanding principal balance
owing at any one time under the Agreement (not including charges and collection costs which may be
owing from time to time under the Agreement) shall not exceed
NINETY FIVE THOUSAND EIGHT HUNDRED FIFTY THREE DOLLARS AND 00 CENTS
(U.S. $95,853.00_____ ) (the "Credit Limit") with interest thereon. The entire indebtedness under
the Agreement, if not paid earlier, is due and payable on 10/21/2043_____ or on such later date
as may be permitted by Lender in writing, or at such earlier date in the event such indebtedness is
accelerated in accordance with the terms of the Agreement and/or this Security Instrument.

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are.
also provided in Section 16.

(A)  **"Security Instrument"** means this document, which is dated _October 16th, 2013_____ ,
together with all Riders to this document.
(B)  **"Borrower"** is TINA  COCA AN UNMARRIED WOMAN
_____. Borrower is the trustor under this Security Instrument.
(C)  **"Lender"** is TCF National Bank. Lender is a national bank organized and existing under the laws
of the United States of America. Lender's address is 2508 Louise Avenue, Sioux Falls, SD 57106.
Lender is the beneficiary under this Security Instrument.
(D)  **"Trustee"** is Regional Service Corporation, a California corporation, 616 1st Avenue, Suite 500,
Seattle, Washington 98104.

California - Open End Deed of Trust        Date  10/16/2013  Time     08:26:53     Page 1 of 13        CA066     08/28/2013

# EXHIBIT 2

# 013

(E)    **"Note"** means the Home Equity Line of Credit Agreement signed by Borrower and dated the same date as this Security Instrument. The Note states that Lender has agreed to make advances to Borrower under the terms of the Note, such advances to be of a revolving nature, with the total outstanding principal balance owing at any one time under the Note (not including charges and collection costs which may be owing from time to time under the Note) not to exceed the Credit Limit plus interest.  Borrower has promised to pay this debt in Periodic Payments and to pay the debt in full not later than the date specified above.

(F)    **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G)    **"Loan"** means the debt evidenced by the Note, plus interest, any late charges, and other charges due under the Note, and all sums due under this Security Instrument.

(H)    **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]_____
☐ 1-4 Family Rider    ☐ Biweekly Payment Rider

(I)    **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)    **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)    **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)    **"Escrow Items"** means those items that are described in Section 3.

(M)    **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)    **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)    **"Periodic Payment"** means the regularly scheduled amount due for: (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)    **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

California - Open End Deed of Trust        Date  10/16/2013   Time     08:26:53     Page 2 of 13        CA066    08/28/2013

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the State of California, County of RIVERSIDE                                      :

See Exhibit A

which currently has the address of 2345 CORNELL CIRCLE  CORONA CA 92881-6625
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges, and other charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

California - Open End Deed of Trust        Date  10/16/2013  Time    08:26:53    Page 3 of 13        CA066    08/28/2013

**2.    Application of Payments or Proceeds.**  All payments accepted and applied by Lender shall be applied in the order of priority set forth in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.**  If required by Lender, Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all Insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount: (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA; and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument and termination of Lender's commitment to make advances under the Loan, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period,

017

Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender: (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument; and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If: (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations); or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.    **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These

agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, and other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11.    **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages,

020

Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.    Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.    Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.    Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower

which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument and all disputes relating in any way to this Security Instrument or your Loan shall be governed and interpreted by: (a) federal law applicable to national banks; and (b) to the extent state law applies and is not preempted, the substantive and procedural law (but not the conflict of laws rules) of the State of South Dakota. Notwithstanding the foregoing, the law of the jurisdiction in which the Property is located shall apply on the issues of the validity and effect of recording, the procedure for enforcement of this Security Instrument and the effect of that procedure, including, without limitation, divestiture of liens, distribution of proceeds from a judicial sale, the title acquired by the purchaser, deficiency judgments and the like.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

California - Open End Deed of Trust    Date 10/16/2013 Time    08:26:53    Page 10 of 13    CA066  08/28/2013

022

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.    Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.    Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer and the address to which payments should be made. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.    Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the

023

Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property: (a) that is in violation of any Environmental Law; (b) which creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.    **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23.    **Release.** Upon termination of the Note as to future advances and payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

California - Open End Deed of Trust        Date  10/16/2013   Time      08:26:53      Page 12 of 13      CA066    08/28/2013

024

24.  **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of courtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____
TINA COCA                                    - Borrower

_____
                                             - Borrower

---

## ACKNOWLEDGMENT

State of California
County of  Riverside  ) ss.

On this 16th day of  October , 2013  , before me,  Sonya Vaughn, Notary Public
personally appeared TINA COCA
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

SONYA VAUGHN
Commission # 1984801
Notary Public - California
Riverside County
My Comm. Expires Jul 12, 2016

Signature  Sonya Vaughn                    (Seal)

025

File Number: 

**Exhibit "A"**

**Legal Description**

A.P.N.: 120-491-018-2 and 120-491-018-2

Real property in the City of Corona, County of Riverside, State of California, described as follows:

PARCEL NO. 1:

LOT 18 OF TRACT NO. 29413, IN THE CITY OF CORONA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN ON THE MAP FILED ON SEPTEMBER 12, 2001 IN BOOK 308, PAGES 45 THROUGH 48, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM:

A. ALL OIL RIGHTS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND RIGHTS TO ALL OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, TO ALL GEOTHERMAL HEAT AND TO ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING; AND

B. THE PERPETUAL RIGHT TO DRILL, MINE, EXPLORE AND OPERATE FOR AND TO PRODUCE, STORE AND REMOVE ANY OF THE SUBSURFACE RESOURCES ON OR FROM THE LOT, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LOT, WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LOT, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS WITHIN OR BEYOND THE EXTERIOR LIMITS OF THE LOT, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES, BUT WITHOUT THE RIGHT TO DRILL, MINE, EXPLORE, OPERATE, PRODUCE, STORE OR REMOVE ANY OF THE SUBSURFACE RESOURCES THROUGH OR IN THE SURFACE OR THE UPPER FIVE HUNDRED FEET (550') OF THE SUBSURFACE OF THE LOT.

PARCEL NO. 2:

NONEXCLUSIVE EASEMENTS FOR ACCESS, DRAINAGE, ENCROACHMENT, MAINTENANCE, REPAIR AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN ON THE MAP AND AS DESCRIBED IN THE DECLARATION.



026

DOC # 2018-0155253
04/23/2018 03:55 PM Fees: $105.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

Recording Requested By:
First American Mortgage Solutions

After Recording Return To:
First Midwest Bank
300 N Hunt Club Road
Gurnee, IL 60031

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: REGINA #080

_____[Space Above This Line for Recording Data]_____

### ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust TCF National Bank (herein "Assignor") whose address is 2508 South Louise Avenue, Sioux Falls, SD 57106, does hereby grant, sell, assign, transfer and convey, unto **First Midwest Bank** (herein "Assignee"), whose address is **One Pierce Place, Suite 1500 Itasca, IL 60143**, all beneficial interest under a certain Deed of Trust dated 10/16/2013, made and executed by **TINA COCA**, , to REGIONAL SERVICE CORPORATION, A CALIFORNIA CORPORATION, Trustee, for TCF National Bank, the original payee, upon the following described property situated in RIVERSIDE County, State of CALIFORNIA

which currently has the address of_____ 2345 CORNELL CIR _____
CORONA,   CALIFORNIA        92881 _____ ("Property Address"):
  [City]        [State]      [Zip Code]
such Deed of Trust  having been given to secure payment of   $95,853.00, which Deed of Trust
                           (Original Principal Amount)
is of record in Book, Volume, or Liber No.    , at page      (or as No. 2013-0500176) of the  Official Records of RIVERSIDE County, State of CALIFORNIA, on 10/18/2013 together with the note(s) and obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on 03/25/2014.

                             TCF National Bank
                             (Assignor)

By: _____
     (Signature)

This Instrument Prepared By:
TCF National Bank
2508 South Louise Avenue
Sioux Falls, SD 57106

          Melanie Oehrlein, Technical Administrator Officer

Multi-State Assignment of Deed of Trust

Page 1 of 2

# EXHIBIT 3

027

_____[Space Below This Line for Acknowledgment]_____

## ACKNOWLEDGEMENT

State of Minnesota )
                          )SS.
County of Dakota )

The foregoing instrument was acknowledged before me this 25th day of March, 2014, by Melanie Oehrlein, the Technical Administrator Officer of TCF National Bank.

Notary Public: _____

Printed Name:  Daniel Gregory Pruden

My Commission Expires:

   01/31/2017

DANIEL GREGORY PRUDEN
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES 01/31/17

028

File Number: 

## Exhibit "A"

### Legal Description

A.P.N.: 120-491-018-2 and 120-491-018-2

Real property in the City of Corona, County of Riverside, State of California, described as follows:

PARCEL NO. 1:

LOT 18 OF TRACT NO. 29413, IN THE CITY OF CORONA, COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA, AS SHOWN ON THE MAP FILED ON SEPTEMBER 12, 2001 IN BOOK 308, PAGES 45
THROUGH 48, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM:

A. ALL OIL RIGHTS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND RIGHTS TO ALL OTHER
HYDROCARBONS BY WHATSOEVER NAME KNOWN, TO ALL GEOTHERMAL HEAT AND TO ALL PRODUCTS
DERIVED FROM ANY OF THE FOREGOING; AND

B. THE PERPETUAL RIGHT TO DRILL, MINE, EXPLORE AND OPERATE FOR AND TO PRODUCE, STORE
AND REMOVE ANY OF THE SUBSURFACE RESOURCES ON OR FROM THE LOT, INCLUDING THE RIGHT
TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LOT, WELLS,
TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LOT, AND TO BOTTOM
SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS WITHIN OR
BEYOND THE EXTERIOR LIMITS OF THE LOT, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR,
DEEPEN AND OPERATE ANY SUCH WELLS OR MINES, BUT WITHOUT THE RIGHT TO DRILL, MINE,
EXPLORE, OPERATE, PRODUCE, STORE OR REMOVE ANY OF THE SUBSURFACE RESOURCES THROUGH
OR IN THE SURFACE OR THE UPPER FIVE HUNDRED FEET (550') OF THE SUBSURFACE OF THE LOT.

PARCEL NO. 2:

NONEXCLUSIVE EASEMENTS FOR ACCESS, DRAINAGE, ENCROACHMENT, MAINTENANCE, REPAIR AND
FOR OTHER PURPOSES, ALL AS MAY BE SHOWN ON THE MAP AND AS DESCRIBED IN THE
DECLARATION.

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Tina M Coca** |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION |
| Case number | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

1.1

**2345 Cornell Cir**
Street address, if available, or other description

**Corona**   **CA**   **92881-6625**
City   State   ZIP Code

County

**What is the property?** Check all that apply
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

Current value of the entire property?
**$666,553.00**

Current value of the portion you own?
**$666,553.00**

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**Fee Simple**

☐ Check if this is community property (see instructions)

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here................................................=>

**$666,553.00**

**Part 2:** Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases*.

3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☑ No
☐ Yes

EXHIBIT 4                                                    030

Debtor 1    Coca, Tina M                                                        Case number *(if known)*

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

   ■ No
   ☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages
   you have attached for Part 2. Write that number here.................................................................=>

   | $0.00 |

---

**Part 3:**  Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

Current value of the
portion you own?
Do not deduct secured
claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes. Describe.....

   | miscellenous House hold goods |                                    $500.00

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices
   including cell phones, cameras, media players, games
   ☐ No
   ■ Yes. Describe.....

   | miscelleneous |                                                     $500.00

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other
   collections, memorabilia, collectibles
   ■ No
   ☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical
   instruments
   ■ No
   ☐ Yes. Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes. Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ■ No
    ☐ Yes. Describe.....

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ■ No
    ☐ Yes. Describe.....

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☐ No
    ■ Yes. Describe.....

   | 1 dog |                                                             $0.00

---

Official Form 106A/B                          Schedule A/B: Property

Debtor 1    Coca, Tina M _____    Case number *(if known)* _____

14.  Any other personal and household items you did not already list, including any health aids you did not list
☑ No
☐ Yes.  Give specific information.....

15.  Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for
Part 3. Write that number here ...........................................................................

| $1,000.00 |

---

**Part 4:  Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

16.  **Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☑ No
☐ Yes...................................................................................

17.  **Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
institutions. If you have multiple accounts with the same institution, list each.
☐ No
☑ Yes.........................    Institution name:

17.1.  **Checking Account**    ADP Card  for direct depost with Amazon    $100.00

18.  **Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
☑ No
☐ Yes...................    Institution or issuer name:

19.  **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and
joint venture**
☑ No
☐ Yes.  Give specific information about them...................
Name of entity:    % of ownership:

20.  **Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
☑ No
☐ Yes. Give specific information about them
Issuer name:

21.  **Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
☐ No
☑ Yes. List each account separately.
Type of account:    Institution name:
**Pension Plan**    YMCA Pension plan    $30,000.00

22.  **Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
☑ No
☐ Yes. ....................    Institution name or individual:

23.  **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
☑ No
☐ Yes.............    Issuer name and description.

Official Form 106A/B    Schedule A/B: Property    page 3
Software Copyright (c) 2018 CINGroup - www.cincompass.com

032

| Debtor 1 | Coca, Tina M | | Case number *(if known)* | |

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
■ No
☐ Yes.............        Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
■ No
☐ Yes.  Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
■ No
☐ Yes.  Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
■ No
☐ Yes.  Give specific information about them...

**Money or property owed to you?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**
■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
■ No
☐ Yes. Give specific information......

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits;
unpaid loans you made to someone else
■ No
☐ Yes.  Give specific information..

31. **Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
■ No
☐ Yes. Name the insurance company of each policy and list its value.

| | Company name: | Beneficiary: | Surrender or refund value: |

32. **Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
■ No
☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
■ No
☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
■ No
☐ Yes.  Describe each claim.........

Official Form 106A/B                    Schedule A/B: Property                                        page 4

Software Copyright (c) 2018 CINGroup - www.cincompass.com

033

Case 6:18-bk-16905-MH    Doc 1    Filed 08/15/18    Entered 08/15/18 16:04:36    Desc
Main Document      Page 28 of 94

Debtor 1    Coca, Tina M _____    Case number *(if known)* _____

35.  **Any financial assets you did not already list**

☑ No

☐ Yes.  Give specific information..

36.  Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for
     Part 4. Write that number here............................................................................................................................    $30,100.00

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest in. List any real estate in Part 1. |
|---------|---|

37.  Do you own or have any legal or equitable interest in any business-related property?

☑ No. Go to Part 6.

☐ Yes.  Go to line 38.

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest in.<br>If you own or have an interest in farmland, list it in Part 1. |
|---------|---|

46.  **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.

☐ Yes.  Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |
|---------|---|

53.  Do you have other property of any kind you did not already list?
     *Examples:* Season tickets, country club membership

☑ No

☐ Yes.  Give specific information.........

54.  Add the dollar value of all of your entries from Part 7. Write that number here  ...................................    $0.00

| Part 8: | List the Totals of Each Part of this Form |
|---------|---|

| | |
|---|---|
| 55.  Part 1: Total real estate, line 2 ........................................................................................ | $666,553.00 |
| 56.  Part 2: Total vehicles, line 5 | $0.00 |
| 57.  Part 3: Total personal and household items, line 15 | $1,000.00 |
| 58.  Part 4: Total financial assets, line 36 | $30,100.00 |
| 59.  Part 5: Total business-related property, line 45 | $0.00 |
| 60.  Part 6: Total farm- and fishing-related property, line 52 | $0.00 |
| 61.  Part 7: Total other property not listed, line 54 + | $0.00 |

62.  Total personal property. Add lines 56 through 61...    $31,100.00    Copy personal property total    $31,100.00

63.  Total of all property on Schedule A/B. Add line 55 + line 62    $697,653.00

Official Form 106A/B                Schedule A/B: Property                page 5

Software Copyright (c) 2018 CINGroup - www.cincompass.com

034

---

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Tina M Coca** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION |
| Case number (if known) | ☐ Check if this is an amended filing |

## Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. Do any creditors have claims secured by your property?

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor 's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|---|
| **2.1    Citimortgage Inc**<br>Creditor's Name<br><br>PO Box 6243<br>Sioux Falls, SD<br>57117-6243<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br><br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Nature of lien. Check all that apply. | $140,025.00 | $0.00 | $140,025.00 |
| Who owes the debt? Check one.<br>■ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt | ☐ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) | | | |
| Date debt was incurred **2005-09** | Last 4 digits of account number    **1314** | | | |
| **2.2    Newpennfin-shellpointm**<br>Creditor's Name<br><br>75 Beattie Pl Ste 300<br>Greenville, SC<br>29601-2138<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br>2345 Cornell Cir, Corona, CA 92881-6625<br><br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Nature of lien. Check all that apply. | $421,213.63 | $666,553.00 | $0.00 |
| Who owes the debt? Check one.<br>■ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt | ☐ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) | | | |
| Date debt was incurred **2013-10** | Last 4 digits of account number    **1209** | | | |

Software Copyright (c) 2018 CINGroup - www.cincompass.com

035

Case 6:18-bk-16905-MH    Doc 1    Filed 08/15/18    Entered 08/15/18 16:04:36    Desc
Main Document      Page 31 of 94

Debtor 1    **Tina M Coca**                                                Case number (if know) _____
_____ _____ _____
First Name        Middle Name          Last Name

| | | | | | |
|---|---|---|---|---|---|

**2.3** **Solarmax Ren**
Creditor's Name

Describe the property that secures the claim:   $33,375.00   $0.00   $33,375.00

3080 12th St
Riverside, CA
92507-4903
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred   2014-06-26        Last 4 digits of account number   8689

**2.4** **Tcf Banking & Savings**
Creditor's Name

Describe the property that secures the claim:   $86,601.00   $666,553.00   $0.00

801 Marquette Ave
Minneapolis, MN
55402-2807
Number, Street, City, State & Zip Code

2345 Cornell Cir, Corona, CA
92881-6625

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred   2013-10        Last 4 digits of account number   2998

Add the dollar value of your entries in Column A on this page. Write that number here:      $681,214.63
If this is the last page of your form, add the dollar value totals from all pages.
Write that number here:      $681,214.63

**Part 2:**  List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Official Form 106D        Additional Page of Schedule D: Creditors Who Have Claims Secured by Property        page 2 of 2

Software Copyright (c) 2018 CINGroup - www.cincompass.com

036

1  WRIGHT, FINLAY & ZAK, LLP
   Nichole L. Glowin, Esq. SBN 262932
2  4665 MacArthur Court, Suite 200
3  Newport Beach, CA  92660
   Tel: (949) 477-5050; Fax: (949) 608-9142
4  nglowin@wrightlegal.net

5
   Attorneys for Movant,
6  First Midwest Bank, its sucessors and/or assigns,

7

8                   UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA- RIVERSIDE DIVISION

10 In re:                              )  Case No.:  6:18-bk-16905-MH
                                       )  Chapter: 13
11                                     )
   TINA M. COCA                        )
12                                     )
                                       )
13               Debtor.               )
                                       )  **DECLARATION OF BROKER IN**
14                                     )  **SUPPORT OF MOTION FOR RELIEF**
                                       )  **FROM AUTOMATIC STAY UNDER 11**
15                                     )  **U.S.C. § 362 (REAL PROPERTY)**
                                       )
16                                     )
                                       )  Date:        10/16/2018
17                                     )  Time:        10:00 am
                                       )  Courtroom:  303
18                                     )  Location:    3420 Twelfth Street
19                                     )                Riverside, CA 92501
                                       )
20                                     )
                                       )
21                                     )
                                       )
22                                     )
                                       )
23 _____)

24

25      I, Sarah Lin, hereby declare and state as follows:

26      1.      I am a licensed broker, California License No. 01485177, have been working in

27 the real estate industry as a licensed real estate salesperson/broker since 2005 and have provided

28 my expertise on evaluating the price of hundreds of properties all over the Southern California,

                                        1

1    California, including the Corona area, for several different companies. At all times relevant

2    herein I have been employed as a licensed real estate broker with Castle Realty Homes, in

3    Downey, California.

4        2.        I have personal knowledge of the matters set forth in this declaration, or I have

5    gained knowledge of them from sources, documents, and individuals which I normally use to

6    conduct and draft broker's price opinion reports.  If called upon to testify to the facts set forth

7    herein, I could and would testify competently to the facts set forth below after being duly sworn.

8        3.        I make this declaration in support of Movant's, First Midwest Bank, its successors

9    and/or assigns ("Movant") Motion for Relief from the Automatic Stay ("Motion").

10        4.        In August of 2018, I was contacted by Movant to prepare a broker's price opinion

11    report to assess the price of the residential real property located at 2345 Cornell Circle, Corona,

12    CA, 92881-6625 ("Property").

13        5.        Pursuant to Movant's request, I reviewed the Property, conducted an exterior

14    inspection of the Property and compared the Property to other comparable units in the area to

15    derive a valuation.

16        6.        My opinion of the price of the Property, based upon the information that I have

17    been able to gather to date concerning, among other things, the current market conditions in the

18    subject area, is that as of August 10, 2018, the Property had a current market price of

19    $650,000.00.  A true and correct copy of my Broker's Price Opinion Report on the Property is

20    attached as **Exhibit 1** hereto and incorporated herein by reference.

21        I declare under penalty of perjury under the laws of the State of California that the

22    foregoing is true and correct. Executed on August __3|st__, 2018 at Downey, California.

23

24

25    Sarah Lin, Declarant

26

27

28

2

DECLARATION OF BROKER IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

# Comparative Market Analysis

## Summary of Subject Property

**2345 Cornell CR , Corona , US 92881**                                    **248 - Corona**

List Dt:  **09/18/2013**          Sub Type:  **Single Family Residence**    Sqft:     **3522**
                                 Year Built:  **2002**                      Sqft Lot: **10019**



| | |
|---|---|
| County: | **Riverside** |
| Parking: | **Pull-through** |
| Attached Gar: | **Yes** |
| Cooling: | **Central, Dual, Electric** |
| View: | **City Lights, Hills** |
| Pool: | **Fenced, Filtered, Gunite, Heated, Heated with Gas, In Ground, Pebble, Permits, Private** |
| Fireplace: | **Great Room, Gas Starter** |
| Lot: | **Front Yard, Lawn, Landscaped, Lot 10000-19999 Sqft, Paved, Park Nearby, Sprinklers Drip System, Sprinklers In Front, Sprinklers In Rear, Sprinklers On Side, Sprinklers Timer, Sprinkler System, Yard** |

EXHIBIT 1 TO DECLARATION OF BROKER          039

# Comparative Market Analysis

2345 Cornell Cr
Corona, 92881

Friday, August 10, 2018

## Active Properties



| | | | | | |
|---|---|---|---|---|---|
| **Addr:** | 2380 Cornell Corona | | | | |
| **Area:** | 248 - Corona | | **MLS #:** | IG18189762 | |
| **OP:** | $729,990 | | | | |
| **LP:** | $729,990 | **SP:** | | **Apx SF:** | 3,583 |
| **LD:** | 07/21/2018 | **SD:** | | **$/SF:** | $203.74 |
| **Beds:** | 5 | **Bath:** | 3 | **LotSF:** | 14,810 |
| **YBlt:** | 2002 | **Prk:** | Direct Garage Acce | **DOM:** | 4 |
| **Elem:** | | **Mid:** | | **High:** | |

**Property Description:** Paradise In The Heart Of Corona! Living Is Easy In This Impressive, Generously Spacious Pool Home With Waterfalls And A Spa, Firepit And Bbq Areas With A Tropical Backdrop Atop Of Almost A 15,000 Sf Lot. Located At The End Of A Cul-De-Sac, Its Open Floorplan With Three Fireplaces Encompasses Five Over-Sized Bedrooms (One Downstairs) With Plenty Of Room For Study, Sleep And Storage, Three Large Bathrooms, A Grand Loft, And A Giant-Sized Master Suite In A Separate Wing Of The House For Added Privacy Overlooks The Backyard With Its Own Fireplace, Double-Door Entry, Separate Tub/Shower, And Dual Vanities. It Also Offers A Living Room With Fireplace, A Formal Dining Room, And An Extra-Large Kitchen With Double Ovens, Lots Of Cabinet Space, An Island, And An Eating Area, Which Opens To The Family Room With Fireplace. The Lot Also Offers A 60' Rv/Boat Parking, Storage Shed, 3-Car Attached Garage With Direct Access, And A Huge Driveway! This Home Is Located Near The Popular Family-Friendly Citrus Park Where You Can Enjoy Picnics, Walking Trails, Playgrounds, And Water Park. Places To Eat And Top-Rated Schools Are Within Walking Distance Too Of This Beautiful Home As Well As Just A Short Drive To Shopping, More Restaurants, And Entertainment – A Home With All These Features Don'T Come On The Market Very Often So Make This House Your Home Before Someone Else Does!



| | | | | | |
|---|---|---|---|---|---|
| **Addr:** | 1333 Sandpiper Corona | | | | |
| **Area:** | 248 - Corona | | **MLS #:** | IG18099245 | |
| **OP:** | $649,900 | | | | |
| **LP:** | $649,900 | **SP:** | | **Apx SF:** | 2,976 |
| **LD:** | 05/17/2018 | **SD:** | | **$/SF:** | $218.38 |
| **Beds:** | 5 | **Bath:** | 4 | **LotSF:** | 7,841 |
| **YBlt:** | 1997 | **Prk:** | Driveway, Garage, | **DOM:** | 18 |
| **Elem:** | Susan B Anthony | **Mid:** | Citrus Hil | **High:** | Santiago |

**Property Description:** Look No Further! This Beautiful 5 Bedroom 4 Bathroom Pool Home Is In One Of The Most Desirable Neighborhoods In South Corona. This Home Features 5 Spacious Bedrooms With 1 Full Bedroom And Bathroom Downstairs. The Master Bedroom Has An Amazing View Of The Mountains And City Lights! The Master Bathroom Has A Beautiful Walk In Tile Shower, Granite Counter Tops And Dual Sinks. The Upstairs Loft Is Roomy Enough For A Pool Table Or Could Be A Great Media Room. The Additional Upstairs Bedrooms Are Spacious And Also Have A Great Views!  There Is A 3 Car Garage That Includes Custom Built In Cabinets And Possible Rv Parking! The Over Sized Family Room Has Bose Lifestyle 38 Surround Sound Speakers And Opens To The Kitchen. Perfect For Entertaining! The Kitchen Includes A Large Island, Granite Countertops, Travertine Back Splash, Stainless Steel Appliances And Ample Cabinets . There Is 18" Porcelain Tile Flooring Thought The Down Stairs. The Backyard Features A Sparkling Pool And Spa, Great For Those Warm Summer Days. There Is Also An Outdoor Shower And Private Bathroom!!!  This Home Has It All!  Beautifully Landscaped Front And Back With A Shed For Storage.  Newer Navion Tankless Water Heater. Walking Distance To Award Winning Schools! Susan B Anthony Elementary And Santiago High School. Close To Shopping And Easy Access To Freeways. This Home Is A Must See!

# Comparative Market Analysis

2345 Cornell Cr
Corona, 92881

Friday, August 10, 2018

## Active Properties



| | | | | |
|---|---|---|---|---|
| **Addr:** | 2563 Gilbert Corona | | | |
| **Area:** | 248 - Corona | | **MLS #:** | IG18159124 |
| **OP:** | $659,900 | | | |
| **LP:** | $659,900 | **SP:** | **Apx SF:** | 3,522 |
| **LD:** | 07/02/2018 | **SD:** | **$/SF:** | $187.37 |
| **Beds:** | 4 | **Bath:** 4 | **LotSF:** | 6,970 |
| **YBlt:** | 2000 | **Prk:** Direct Garage Acce | **DOM:** | 39 |
| **Elem:** | | **Mid:** | **High:** | |

**Property Description:** Stop The Car!!  This Is The Home Your Clients Are Waiting For.  Move In Ready.  Executive Home.  Lots Of Square Feet.  Room For An Office Or Two, Built In Office Cabinets And Shelving.  Large Kitchen, Double Oven, Walk In Pantry, Kitchen Island, Open Floor Plan Into The Family Room.  Eat In Kitchen Or In Dining Room.  Family Room And Living Room.  This Home Has It All.  Near Schools And Park.  Extra Large Garage For Those Projects.  You Won'T Be Disappointed!!  Within Walking Distance To Award Winning California Distinguished Susan B. Anthony Elementary School.



| | | | | |
|---|---|---|---|---|
| **Addr:** | 2538 Gilbert Corona | | | |
| **Area:** | 248 - Corona | | **MLS #:** | OC18124577 |
| **OP:** | $689,000 | | | |
| **LP:** | $689,000 | **SP:** | **Apx SF:** | 3,137 |
| **LD:** | 05/25/2018 | **SD:** | **$/SF:** | $219.64 |
| **Beds:** | 5 | **Bath:** 3 | **LotSF:** | 7,405 |
| **YBlt:** | 2000 | **Prk:** Direct Garage Acce | **DOM:** | 77 |
| **Elem:** | Anthony | **Mid:** Citrus Hills | **High:** | Santiago |

**Property Description:** Spectacular Pool Home With Water Slide, Water Fall And Hot Tub.  Dramatic Cathedral Ceilings Greet You When You Enter This Home.  There Are 4 Bedrooms And A Huge Bonus Room With Double Doors.  The Downstairs Bedroom And Bathroom With Shower Are Great For Guests Or Those Who Do Not Want To Go Up The Stairs.  There Is A Formal Living Room, Dining Room And Family Room With Fire Place.  Plantation Shutters, Crown Molding And  Recessed Lighting.  The Large Master Bedroom Has Vaulted Ceilings And A Double Door Entry.  The Master Bathroom Features A Separate Shower And Bath Tub, Two Sinks And Two Closets, Including A Walk In Closet.  There Is A Big Linen Area In The Hall.  Inside Laundry Room With Extra Storage.  The Backyard Is An Entertainer'S Delight With Pool And Spa With Rock Water Fall, Grotto And Rock Slide.  Low Maintenance Yard With Concrete Patio, Planters With Mature Landscaping And Plenty Of Room For Patio Furniture And A Bbq.  There Is Even A 3 Car Garage.  Located Near Schools, Shopping, Parks, Freeways And More.

## Comparative Market Analysis

2345 Cornell Cr
Corona, 92881

Friday, August 10, 2018

### Closed Properties



| | | | | | |
|---|---|---|---|---|---|
| **Addr:** | 2480 Sweet Rain Corona | | | | |
| **Area:** | 248 - Corona | | **MLS #:** | IG18041561 | |
| **OP:** | $649,900 | | | | |
| **LP:** | $649,900 | **SP:** | $650,000 | **Apx SF:** | 2,921 |
| **LD:** | 02/25/2018 | **SD:** | 04/06/2018 | **$/SF:** | $222.53 |
| **Beds:** | 4 | **Bath:** | 3 | **LotSF:** | 7,841 |
| **YBlt:** | 1998 | **Prk:** | Driveway, Garage - | **DOM:** | 8 |
| **Elem:** | Susan B Anthony | **Mid:** | Citrus Hills | **High:** | Santiago |

**Property Description:** Look No Further! This Beautifully Upgraded 4 Bedroom 3 Bathroom Pool Home Is In One Of The Most Desirable Neighborhoods In South Corona. This Home Features 4 Spacious Bedrooms With 1 Bed/Bath Downstairs. The Master Bedroom Has A Retreat With A Closet That Could Be Converted Into A 5Th Bedroom. The Master Bathroom Has Been Completely Renovated With A Beautiful Walk In Tile Shower With 3 Shower Heads, Tile Flooring And Separate Vanities And His And Her Mirrored Closets.   The Upstairs Loft Is Roomy And Has Storage Galore. With A 3 Car Garage That'S Finished And Has Built In Cabinets And Beverage Refrigerators. The Kitchen Is Open And Airy And Has Been Completley Remodeled With A Unique Oversized Concrete Island , Granite Farmhouse Sink, Butcher Block Perimeter Counters,  White Birch Cabinets, Upgraded Lighting ,Stainless Steel Appliances And A Wine Fridge!  All The Bedrooms Are Spacious With Wood Flooring, Custom Paint.  The Backyard Is Perfect For Relaxing Or Entertaining With A Sparkling Pool Upgraded With A Pebble Tech Bottom And Slate Tile, Built In Bbq, Water Resistant Palapa, Artificial Turf And Putting Green. .  Beautifully Landscaped For Low Maintenance And Water Conservation.  This Backyard Is An Entertainers Dream! New Ac Unit, Whole House Fan And Solar!!!  Walking Distance To Award Winning Schools! Susan B Anthony Elementary And Santiago High School. Close To Shopping And Easy Access To Freeways. This Home Is A Must See With Too Many Upgrades And Extras To List!



| | | | | | |
|---|---|---|---|---|---|
| **Addr:** | 1172 Carter Corona | | | | |
| **Area:** | 248 - Corona | | **MLS #:** | 18305824 | |
| **OP:** | $699,000 | | | | |
| **LP:** | $649,900 | **SP:** | $620,000 | **Apx SF:** | 3,099 |
| **LD:** | 01/22/2018 | **SD:** | 08/08/2018 | **$/SF:** | $200.06 |
| **Beds:** | 5 | **Bath:** | 3 | **LotSF:** | 7,405 |
| **YBlt:** | 1999 | **Prk:** | Garage - Three Doo | **DOM:** | 149 |
| **Elem:** | | **Mid:** | | **High:** | |

**Property Description:** Beautiful Two-Story Home In South Corona. This Home Features Over 3,000 Sq. Ft. Of Living Space With 4 Bedrooms, 3 Bathrooms, And A 3-Car Garage. As You Enter, You Are Welcomed To A Bright And Welcoming Ambiance With Natural Lighting That Flows Throughout The Home. The Spacious And Open Floor Plan Allows For Easy Access Into The Dining Room, Living Room, And Kitchen. The Kitchen Features Stainless Steel Appliances, Lots Of Cabinets For Storage, A Kitchen Island And Opens To The Family Room With Fireplace.  Large Master Suite With Walk-In Closet And A Master Bathroom That Includes A Shower, Tub, And Dual Sinks.  This Home Is Also Ideally Located Close To Schools, Parks, Shopping Centers, And Foothill Parkway.

# Comparative Market Analysis

2345 Cornell Cr
Corona, 92881

Friday, August 10, 2018

## Closed Properties



| | | | | | |
|---|---|---|---|---|---|
| **Addr:** | 1510 E Chase Corona | | | | |
| **Area:** | 248 - Corona | | | **MLS #:** | IG18025455 |
| **OP:** | $599,900 | | | | |
| **LP:** | $599,900 | **SP:** | $590,000 | **Apx SF:** | 2,913 |
| **LD:** | 02/06/2018 | **SD:** | 03/09/2018 | **$/SF:** | $202.54 |
| **Beds:** | 4 | **Bath:** | 3 | **LotSF:** | 8,276 |
| **YBlt:** | 2012 | **Prk:** | | **DOM:** | 7 |
| **Elem:** | | **Mid:** | | **High:** | |

**Property Description:** Newer Construction In South Corona - Home Less Than 6 Years Old.  No Hoa And Extremely Low Taxes!  Located Across The Street From Santiago High School.  Grand Entry With Vaulted Ceilings And Open Floor Plan.  Downstairs Bedroom (Currently Used As An Office) And A Full Bathroom Downstairs.  Nicely Upgraded Kitchen With Granite Countertops, Stainless Steel Appliances, Upgraded Cabinets, Walk-In Pantry, And Center Island.  Lots Of Counter And Cabinet Space.  4 Large Bedrooms Upstairs With Small Loft Area.  All 3 Bathrooms Are Nicely Upgraded With Stone Counters, Upgraded Cabinets, And Ceramic Tile Flooring.  3 Car Garage And Indoor Laundry.  Close To Schools, Parks, Shopping, And Freeways.

# Comparative Market Analysis

2345 Cornell Cr
Corona, 92881

Friday, August 10, 2018

## Active Properties

| | |
|---|---|
| # of Listings | **4** |
| Lowest Price | **$649,900** |
| Highest Price | **$729,990** |
| Average Price | **$682,198** |
| Avg Price/SqFt | **$207.28** |
| Avg DOM | **35** |



## Closed Properties

| | |
|---|---|
| # of Listings | **3** |
| Lowest Price | **$590,000** |
| Highest Price | **$650,000** |
| Average Price | **$620,000** |
| Avg Price/SqFt | **$208.38** |
| Avg DOM | **55** |



Prepared by **Sarah Lin CalBRE: 01485177**
Castle Realty Homes    562-861-8100

044

# Comparative Market Analysis

2345 Cornell Cr
Corona, 92881

Friday, August 10, 2018

## Summary Graph/Analysis



| Avg Price | Min Price | Max Price |

### Cumulative Analysis

| Listing Category | Lowest Price | Highest Price | Average Price | Avg $ Per |
|---|---|---|---|---|
| Active | $649,900 | $729,990 | $682,198 | $207.28 |
| Closed | $590,000 | $650,000 | $620,000 | $208.38 |
| **Totals / Averages** | **$590,000** | **$729,990** | **$655,541** | **$207.75** |

### Sold Property Analysis

| Address | List Price | Sold Price | DOM | %SP/LP | SP/Sqft |
|---|---|---|---|---|---|
| 2480 Sweet Rain Corona | $649,900 | $650,000 | 8 | %0.02 | $222.53 |
| 1172 Carter Corona | $649,900 | $620,000 | 149 | -%4.60 | $200.06 |
| 1510 E Chase Corona | $599,900 | $590,000 | 7 | -%1.65 | $202.54 |
| **Total Averages** | **$633,233** | **$620,000** | **55** | **%-2.08** | **$208.38** |

Note: Selected properties without SQFT values are not included in the "Average per Sqft" calculations

## Property Summary

| S | Street Address | Bd | Bth | Sqft | Built | L Price | S Price | Sold Date | DOM |
|---|---|---|---|---|---|---|---|---|---|
| A | 2380 Cornell | 5 | 3 | 3,583 | 2002 | $729,990 | | | 4 |
| A | 1333 Sandpiper | 5 | 4 | 2,976 | 1997 | $649,900 | | | 18 |
| S | 2480 Sweet Rain | 4 | 3 | 2,921 | 1998 | $649,900 | $650,000 | 04/06/2018 | 8 |

# Comparative Market Analysis

2345 Cornell Cr
Corona, 92881

Friday, August 10, 2018

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| A | 2563 Gilbert | 4 | 4 | 3,522 | 2000 | $659,900 | | | 39 |
| A | 2538 Gilbert | 5 | 3 | 3,137 | 2000 | $689,000 | | | 77 |
| S | 1172 Carter | 5 | 3 | 3,099 | 1999 | $649,900 | $620,000 | 08/08/2018 | 149 |
| S | 1510 E Chase | 4 | 3 | 2,913 | 2012 | $599,900 | $590,000 | 03/09/2018 | 7 |

Prepared by **Sarah Lin CalBRE: 01485177**
Castle Realty Homes    562-861-8100

046

**Comparative Market Analysis**

2345 Cornell Cr
Corona, 92881

Friday, August 10, 2018

# Brief Summary of Compared Listings

This report summarizes the comparable listings contained in this market analysis.

**Status: Active**

| ML# | L/S Date | Address | City | Sqft | Bd | Bth | Built | L/S Price | DOM |
|---|---|---|---|---|---|---|---|---|---|
| IG18189762 | 07/21/2018 | 2380 Cornell | Corona | 3,583 | 5 | 3 | 2002 | $729,990 | 4 |
| IG18099245 | 05/17/2018 | 1333 Sandpiper | Corona | 2,976 | 5 | 4 | 1997 | $649,900 | 18 |
| IG18159124 | 07/02/2018 | 2563 Gilbert | Corona | 3,522 | 4 | 4 | 2000 | $659,900 | 39 |
| OC18124577 | 05/25/2018 | 2538 Gilbert | Corona | 3,137 | 5 | 3 | 2000 | $689,000 | 77 |
| **Averages:** | | | | **3,305** | **5** | **3.50** | **2000** | **$682,198** | **35** |

**Status: Closed**

| ML# | L/S Date | Address | City | Sqft | Bd | Bth | Built | L/S Price | DOM |
|---|---|---|---|---|---|---|---|---|---|
| IG18041561 | 04/06/2018 | 2480 Sweet Rain | Corona | 2,921 | 4 | 3 | 1998 | $650,000 | 8 |
| 18305824 | 08/08/2018 | 1172 Carter | Corona | 3,099 | 5 | 3 | 1999 | $620,000 | 149 |
| IG18025455 | 03/09/2018 | 1510 E Chase | Corona | 2,913 | 4 | 3 | 2012 | $590,000 | 7 |
| **Averages:** | | | | **2,978** | **4** | **3.00** | **2003** | **$620,000** | **55** |

**Comparative Market Analysis**

2345 Cornell Cr
Corona, 92881

Friday, August 10, 2018

# Brief Summary of Compared Listings

This report summarizes the comparable listings contained in this market analysis.

## Summary

| Status | Total | Avg Price | Avg $ Per SqFt | Median | Low | High | Avg DOM |
|--------|-------|-----------|----------------|--------|-----|------|---------|
| ACTIVE | 4 | $682,198 | $207 | $674,450 | $649,900 | $729,990 | 35 |
| PND/ActUC | | | | | | | |
| SOLD/LEASE | 3 | $620,000 | $208 | $620,000 | $590,000 | $650,000 | 55 |
| WITHD/HOLD | | | | | | | |
| EXPIRED/CANC | | | | | | | |
| **Total** | **7** | **$655,541** | **$208** | **$650,000** | **$590,000** | **$729,990** | **43** |

**Comparative Market Analysis**

2345 Cornell Cr
Corona, 92881

Friday, August 10, 2018

## CMA Map Layout

This page displays the Map for the CMA Subject and your comparables.



| 1 | 2345 Cornell Cr |
| 2 | 2380 Cornell Circle |
| 3 | 1333 Sandpiper Lane |
| 4 | 2480 Sweet Rain Way |
| 5 | 2563 Gilbert Avenue |
| 6 | 2538 Gilbert Avenue |
| 7 | 1172 Carter Lane |
| 8 | 1510 Chase Drive E |

# Comparative Market Analysis

2345 Cornell Cr
Corona, 92881

Friday, August 10, 2018

## Pricing Recommendation

This page suggests a recommended selling price based on a thorough analysis of your property.

**After analyzing your property, comparable properties on the market now, recent sales and comparable properties that failed to sell, I conclude that in the current market, your property is most likely to sell for $650,000.**

Prepared by **Sarah Lin CalBRE: 01485177**
Castle Realty Homes   562-861-8100

050